The capture of the Peterhoff on the high seas, at the place of her capture, was lawful. From the moment a vessel, having on board contraband articles, which have a destination to the enemy's country, leaves her port of departure, she may be legally captured; and it is not necessary to wait until the goods are actually endeavoring to enter the enemy's country, the penalty attaching the moment the illegal transportation commences. Halleck, Int. Law, c. 24, § 7, p. 573; 2 Wildm. Int. Law, 218; 1 Duer, Ins. 626, § 7; The Imina, 3 C. Rob. Adm. 167; The Trende Sostre, 6 C. Rob. Adm. 390, note; The Columbia, 1 C. Rob. Adm. 154; The Neptunas, 2 C. Rob. Adm. 110.

# Case No. 11,025.

## The PETERHOFF.

[Blatchf. Pr. Cas. 620.] [1]

District Court, S. D. New York. Jan., 1865.

APPEAL IN PRIZE CASES—EFFECT UPON THE PROPERTY—CASES PENDING APPEAL—CAPTURE ON LAND—TITLE.

1. An appeal to the supreme court from the decree of this court in a prize cause removes the cause from this court, and places the prize property exclusively under the control of the appellate tribunal.

2. Pending such an appeal, this court refuses to order the costs of the prize commissioner to be paid out of the funds in this case.

3. The distinction stated between the effects of a capture of property on land by a belligerent and of a capture of prize property at sea.

4. In the former case the title passes as soon as the capture is complete. In the latter case the right of property remains unchanged until a final decree of condemnation by the courts of the country of the captors.

In admiralty.

BETTS, District Judge. This suit was terminated in the district court on the last day of July term, 1863, by the condemnation as prize of the steamship and cargo. [Case No. 11,023.] A final decree of forfeiture was entered against the vessel and cargo on the 1st of August thereafter [Id. 11,024], and on the 8th day of the same month the cause was removed, by appeal, to the supreme court of the United States, pursuant to the provisions of the act of congress "to regulate proceedings in prize cases," approved March 3, 1863 (12 Stat. 759, §§ 7, 8). The cause was thereupon removed, by such appeal, to the supreme court, where it is now pending, awaiting, on the docket of the court, its regular course of hearing and final determination.

The removal of the cause from the district court necessarily takes from that court all authority over the subject-matters involved in the suit, and places them exclusively under the control of the paramount tribunal. The latter body alone has capacity to change the position or use of the res. while it is under contestation. In matters of prizes held for adjudication, the tenure of the property seized is eminently qualified, provisional, and destitute of absolute ownership. The captors, by the universal rule of the modern law of civilized nations, became only keepers of the arrested property, for the purpose of submitting it to judicial inquiry and judgment; the question of its confiscability for violation of the laws of war preceding and overriding all other questions of title or possession by the captors. It would constitute an undeniable outrage on those laws for the government of the United States, through any of its departments, executive, judicial or military,

---

[1] [Reported by Samuel Blatchford, Esq.]

to appropriate this prize or its proceeds, mero motu, without the preliminary of a legal scrutiny and condemnation, prosecuted in due form of legal procedure. The distinction between the capture of property by a belligerent during war waged on land, and a prize seizure, is as definitely marked in consequence and effect, as if the two had no common foundation of authority. 1 Kent, Comm. 101, 102, note 6; Halleck, Int. Law, c. 30, §§ 1, 4. When property is captured on land by a belligerent, the title passes and is vested so soon as the capture is complete, and the property then belongs absolutely to the sovereign. In regard to a prize taken at sea, the right of property is not changed by the seizure alone. The prize remains in the hands of the captor, lawfully sequestrated, under a species of trusteeship, awaiting a trial at law in the courts of the nation seizing it. While undergoing the processes of law necessary to ascertain its character, it is exempt from all power of the captors other than that of safe-keeping for the purposes of trial, and of determining its culpability. Until the decree of the prize court has transferred the title of the prize to the capturing power, the lawful proprietorship continues with the original possessor, subject to no other use or appropriation by its occupant than that of safe-keeping under arrest, pending judicial proceedings seeking its forfeiture.

Manifestly, in that status of the property, it cannot be lawfully divested of its condition of pledge, so long as the question of its lawful ownership is undetermined and rests under judicial advisement. These considerations are irrefragable, in respect to the functions of a court of dernier resort within whose cognizance the property may be placed; and more especially there is no shadow of authority existing in a tribunal from whose jurisdiction a subject of litigation is carried by appeal to a superior one, to recur to and exercise a renewed power over the subject-matter, after it has been transferred and submitted to the exclusive judgment of the ultimate tribunal.

It is within the competency of the supreme court, on the appeal in this cause, to decree the suit null and void; to order a new trial; to deny the recovery of costs, or to adjudge, at its discretion, any modification of the forfeiture pronounced against the prize by the district court, which the court of last resort may regard as equitable and just. The inferior court cannot lawfully intercept that corrective authority of the superior court, and prevent, by otherwise disposing of the res itself, while the appellate court may be in the act of rectifying the injury inflicted on the appealing party, that order of remedy which is most appropriate and desirable to the aggrieved suitor.

There is no effective judgment against the prize property or its proceeds remaining on the records of the district court. In prin-

ciple, its orders to devote the proceeds of the captured property to the payment of the costs and expenses of the suit, while the cause remains within the control of the supreme court, for final decision, can be no more appropriate and available than directions from it to make full distribution of the proceeds of the prize among the captors, together with costs.

It seems to me a misapprehension of the case of The Collector, 6 Wheat. [19 U. S.] 194, to regard it as laying down the doctrine, that after an appeal to the supreme court, the funds connected with the cause still remain subject to the order and disposal of the inferior court. On the contrary, the opposite conclusion appears to be plainly stated. The inferior court remains the custodian of the proceeds in the cause under litigation while it is pending in the supreme court, but the inferior court is expressly inhibited from making any order respecting the property whether it has been sold and the proceeds paid into court, or whether it remains specifically, or its proceeds remain in the hands of the marshal. The property or fund in this suit is undoubtedly in the keeping or charge of the district court, or of the sub-treasury, as its actual depository, but the lawful control of it belongs to the supreme court, in all particulars.

These principles will preclude my granting the motion of the counsel on the part of the prize commissioner, for an order directing the payment of the costs taxed in his favor in this case out of the funds deposited in charge of this court, and it is, accordingly, not necessary to discuss the further question presented, and much urged, respecting the right of the commissioner to have those costs declared to be payable out of the proceeds of the cause in court, or, in case of the deficiency of that fund, out of the judiciary fund in the treasury. It is understood that that question is to come before the court, in other cases, now on appeal from this court to the supreme court, in which a decision upon the point may become practically important, and not be merely speculative and inactive. The consideration of the question may, I think, more appropriately abide an occasion which shall demand its determination.

I am by no means prepared to accept the qualified provision in the 13th section of the prize act of June 30, 1864 (13 Stat. 311), that the district court notwithstanding the appeal to the supreme court "may still proceed to make a decree of distribution, so far as to determine what share of the prize shall go to the captors, and what vessels are entitled to participate therein," as giving authority to the district court to pay out of its registry or charge the moneys or fund under appeal in the supreme court. I am inclined rather to regard it as a strongly implied inhibition to the district court against intermeddling in any way with the actual dis-

posal of the funds left in its charge, except in execution of positive directions of the supreme court.